**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CENTURION SERVICE GROUP, LLC, an Illinois limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> SBMC HEALTHCARE, LLC, a Texas limited liability company, MCVEY & CO. INVESTMENTS, LLC, a Texas limited liability company, MARTY L. MCVEY, a Texas resident, and RICHARD S. GARFINKEL, a Texas resident, <br><br> Defendants. | ) ) ) ) ) ) ) Case No. 12 C 9318 ) ) ) ) ) ) ) ) ) ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Defendants McVey & Co. Investments, LLC ("McVey LLC") and Marty L. McVey ("McVey") (collectively, "Defendants") move pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(2) and 12(b)(3) to dismiss all claims against them[1] due to lack of personal jurisdiction and improper venue.[2] (R. 15, Mot. at 1.) Alternatively, they move to dismiss on the basis of *forum non conveniens*, or to transfer on *forum non conveniens* grounds pursuant to 28 U.S.C. §§ 1404. (*Id*. at 1.) The Court grants Defendants' motion without prejudice.

---

[1] Count II for declaratory judgment is against McVey and Garfinkel and Count III for fraud is against all Defendants.

[2] Initially, Defendant Richard S. Garfinkel ("Garfinkel") also moved to dismiss as part of this motion. The parties have since represented to the Court that Centurion has reached a settlement with Defendants SBMC Healthcare, LLC and Garfinkel. (R. 69.) The Court, therefore, denied as moot the pending motions to dismiss relating to SBMC Healthcare, LLC. (R. 71.) The Court also denies this motion as moot with regard to Garfinkel and thus will not include him in the Court's jurisdictional analysis.

## BACKGROUND

On November 23, 2012, Plaintiff Centurion Service Group, LLC ("Plaintiff" or "Centurion"), an auctioneer in the business of buying, selling and/or conducting auctions of medial equipment, filed its Amended Verified Complaint alleging breach of contract, declaratory relief, and fraud. Plaintiff's claims stem from an agreement between Defendant SBMC Healthcare, LLC ("SBMC") and Centurion regarding the sale and auction of medical equipment located at Spring Branch Medical Center (the "Agreement"). (R. 7, Amend. Compl. ¶11; R. 16-1, McVey Decl. ¶ 6; R. 38, Pl.'s Resp. ¶ 2.) SMBC is the owner and operator of the Spring Branch Medical Center, a hospital in Houston, Texas. (Amend. Compl. ¶ 10.) SBMC's manager for its general operations is McVey LLC. (Amend. Compl. ¶ 10.) McVey LLC is a limited liability company located in and with its principal and only place of business in Houston, Texas. (McVey Decl. 3.) Marty McVey is the Chief Executive Officer for both SBMC and McVey LLC. (McVey Decl. ¶¶ 3, 4.) McVey is a citizen of Texas and resides in Houston, Texas. (Amend. Compl. ¶ 4, R. 216-1, McVey Decl. ¶ 2.)

"McVey LLC, McVey and Garfinkel were not parties to the Agreement" between Centurion and SBMC. (R. 16, Defs.' Mem. ¶ 1; McVey Decl. ¶ 8.) McVey, as Chief Executive Officer of SBMC and of McVey LLC, and Garfinkel, general counsel for SBMC and McVey LLC, however, executed a personal Guarantee for the full performance of SBMC's obligations under the Agreement (the "Guarantee"). (Pl.'s Resp. ¶ 2, McVey Decl. ¶ 3, 7.) The parties negotiated and executed the Guarantee in Houston, Texas. (McVey Decl. ¶ 7.) The Guarantee did not include a forum selection clause, unlike the Agreement which contained a clause designating Cook County, Illinois as the appropriate forum for disputes under the Agreement.

(*Id* at ¶¶ 6, 7.) Centurion later waived the Guarantee, relying on the fact that SBMC still owned all assets defined in the Agreement. (Pl.'s Resp. ¶ 3; Amend. Compl. ¶ 32.) Centurion alleges that Defendants intentionally concealed that McVey had already sold some of these assets to a third party. (Pl.'s Resp. ¶ 3; Amend. Compl. ¶¶ 59-60, 68-69.)

In the Amended Complaint, Centurion alleges two counts against McVey and McVey LLC. In Count II, Centurion seeks a declaratory judgment against McVey that (1) he fraudulently obtained the release of the Guarantee, and (2) that the release of the Guarantee executed by McVey remains in full force and effect. (Amend. Compl. ¶ 63.) In Count III, Centurion asserts a fraud claim against McVey and McVey LLC, alleging that they obtained the release of the Guarantee by fraud. (Pl.'s Resp. ¶ 3; Amend. Compl. ¶¶ 67-76.)

## ANALYSIS

Defendants assert that they are not subject to personal jurisdiction in the Northern District of Illinois and move to dismiss this lawsuit pursuant to Rule 12(b)(2). They also move pursuant to Rule 12(b)(3) to dismiss based on lack of venue, or alternatively, to transfer the case to the Southern District of Texas.

### I. Rule 12(b)(2) - Personal Jurisdiction

Where, as here, a court's subject matter jurisdiction is based on diversity of citizenship, courts may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). "A state's exercise of personal jurisdiction is also subject to the demands of the Fourteenth Amendment's due process clause" and "[b]ecause Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state

statutory and federal constitutional requirements merge." *uBID, Inc*., 623 F.3d at 425. Looking to the federal constitutional requirements, it is well-established that the due process test for personal jurisdiction requires that a defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed.2d 1283 (1958).

Two types of personal jurisdiction exist — general and specific. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Abelesz v. OTP Bank,* 692 F.3d 638, 654 (7th Cir. 2012). "General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State, and is permitted only where the defendant conducts continuous and systematic general business within the forum state." *GCIU–Emp'r Ret. Fund,* 565 F.3d at 1023; *see also Helicopteros Nacionales de Colombia,* 466 U.S. at 416. On the other hand, "[s]pecific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Houston Metroplex, P.A.,* 623 F.3d 440, 444 (7th Cir. 2010); *see also Abelesz,* 692 F.3d at 654 ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself.").

Here, Centurion does not argue that general jurisdiction exists, but instead maintains that it has established specific jurisdiction over Defendants concerning its fraud claims. The "court's exercise of specific jurisdiction requires that the defendant's contacts with the forum state relate to the challenged conduct." *Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012). There are three requirements to establish specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed.2d 528 (1985) (internal citation omitted)).

In ruling on a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi–Sythlabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). When a district court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a prima facie case of personal jurisdiction. *See uBID,* 623 F.3d at 423-24; *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir. 2009). Under such circumstances, the plaintiff bears the burden of establishing that personal jurisdiction exists. *See uBID, Inc.,* 623 F.3d at 423-24; *see also Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir.1986) ("Normally it is well established that the plaintiff must prove jurisdiction exists once it is challenged by the defendant."). In determining whether the plaintiff has met its burden, courts resolve all factual disputes in the plaintiff's favor. *See id.* at 423-24; *GCIU–Emp'r Ret. Fund,* 565 F.3d at 1020 n.1. Here, Defendants submitted affidavits contesting personal jurisdiction and

5

venue as part of their motion to dismiss. (R. 16-1, 16-2.) Plaintiff did not offer any affidavits or other evidence to contradict the contents of Defendants' affidavits. The Court, therefore, accepts as true any facts contained in the Defendant's affidavits or proffered evidence that Plaintiff does not refute. *See id.*; *see also Purdue Research Found.,* 338 F.3d at 783 (if the defendant submits affidavits or other evidence in opposition to the plaintiff's motion, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction").

Specifically, McVey and Garfinkel submitted declarations which attest that Defendants:

- have not transacted any business in Illinois;
- have not owned, used, or possessed any real estate in Illinois;
- have not contracted to insure any person, property, or risk located within Illinois;
- have not made or performed any contract or promise connected with Illinois;
- have not acquired any ownership, possession or control of any asset or thing of value present within Illinois at such time that such asset or thing was acquired;
- do not own an interest in any trust administered within Illinois;
- do not exercise any powers granted under the authority of the State of Illinois; and
- have not traveled to Illinois during the time relevant to this lawsuit.

(R. 16-1, McVey Decl.; R. 16-2, Garfinkel Decl.) Furthermore, Defendants' declarations state that the Agreement at the heart of this case – to which they were not parties – pertained to medical equipment located at Spring Branch Medical Center in Houston, Texas. (McVey Decl. ¶ 6.) Additionally, the "sale and auction of SBMC's medical equipment as contemplated by the Agreement took place at Spring Branch Medical Center in Houston, Texas. . . In fact, sold items were required to be physically removed from the premises in Houston." (McVey Decl. ¶ 7.) Also, "[t]he money paid by Centurion both initially and after the sale was paid to SBMC in

Texas." (McVey Decl. ¶ 14.) Because Plaintiff has not offered any evidence, beyond the allegations contained the Amended Complaint, to dispute or contest these facts, the Court deems them as true for purposes of this motion. Each of these facts undercuts personal jurisdiction over Defendants.

Furthermore, Defendants also declare that they have not committed any tortious act in Illinois to warrant jurisdiction. (R. 16-1, McVey Decl. ¶ 10.) Centurion, however, argues that "[t]he conduct giving rise to the fraud claim occurred in Illinois" and that McVey and McVey LLC, through McVey and Garfinkel, directed their conduct at Illinois to complete the alleged fraud. (Pl.'s Resp. ¶ 14.) Specifically, Centurion claims that "Garfinkel and McVey, through counsel, reached out to Eric Tivin and Centurion's counsel, both in and residents of Illinois, by email and telephone concerning release of the Guarantee and payment for the Assets without disclosing that some of the Assets were no longer owned by SBMC." (Pl.'s Resp. ¶ 14.) According to Centurion, this conduct, which Defendants purposefully targeted at Illinois, establishes jurisdiction over Defendants.

There is no evidence of other contacts, besides this email and telephone contact, relevant to the jurisdictional inquiry. As noted above, accepting the uncontested facts in Defendants' affidavits as true, the parties did not negotiate nor execute the Agreement or Guarantee in Illinois, nor was the subject of the Agreement, namely the medical equipment, stored or delivered in Illinois. *See* 735 ILCS 5/2-209. Defendants also did not reside in Illinois, travel to Illinois, or make or perform any contract in Illinois. *Id.* Furthermore, Centurion's unilateral wiring of money from Illinois banks to Defendants does not constitute action taken by Defendants directed at Illinois. *See, e.g., Burger King,* 471 U.S. at 475 ("This purposeful

availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person."); *see also Purdue*, 338 F.3d at 780 ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity.")  The only possible conduct by Defendants "giving rise to the fraud claim" which could have occurred in Illinois, therefore, is the telephone and email communication, which McVey allegedly made through counsel.

Centurion contends that this phone and email communication is relevant to the jurisdictional inquiry because it was part of the on-going fraudulent scheme. (Pl.'s Resp. ¶¶ 13-14.)  Specifically, Centurion argues that Defendants failed to disclose that SBMC no longer owned some of the relevant assets and thereby "complete[d] the deception" with these communications. (*Id*.)  Whether these communications did deceive Centurion is not an issue for this motion to dismiss. *See, e.g., Felland*, 682 F.3d at 676 (finding that whether communications were in fact "lulling" communications that did deceive Plaintiff was not important on a motion to dismiss for lack of personal jurisdiction as the court accepted the allegations as true).  Rather, the question is whether, assuming these communications furthered the alleged fraud, Defendants purposefully directed these actions at Illinois.

It is well-settled in Illinois that "[w]here a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant." *Heritage House Rest., Inc. v. Continental Funding Grp., Inc*., 906 F.2d 276, 281 (7th Cir. 1990); *see also Purdue*, 338 F.3d at 781 (if "a commercial defendant's efforts are directed toward a particular jurisdiction, the fact that the actor did not actually enter the jurisdiction is not of crucial

importance."). Here, however, Centurion has not alleged any such existing natural relationship. To the contrary, Defendants' affidavits establish that the negotiation and execution of the Agreement and Guarantee occurred in Texas, not Illinois. (McVey Decl. ¶¶ 7, 14.) In fact, the communication via telephone and email in Illinois to which Centurion vaguely references may have been an aberration for this relationship in which previous negotiations occurred in Texas and where the subject of the Agreement and the Guarantee were medical supplies located in Texas, not Illinois. *See cf. Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002) ("prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' may indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." ) (quoting *Burger King*, 471 U.S. at 479). Notably, in its Amended Complaint, Centurion referenced only a single email communication between McVey and Centurion in any way related to the negotiation of the Agreement, and no specific communication related to the Guarantee. (R.7-3, Ex. C.) Furthermore, Centurion has not alleged, let alone provided evidence, that Defendants had "intensive" negotiations with any Centurion representative in Illinois conducted by e-mail, fax, and telephone as might support jurisdiction along with other contacts. *See, e.g., Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357, at *5-6 (N.D. Ill. Aug. 25, 2008) (finding jurisdiction because contacts were "not random, fortuitous, or attenuated" where the parties conducted "the intensive negotiations via telephone, email and fax" "over a contract that was to be executed and performed in Chicago").

Even more troubling, Centurion does not state how many telephonic or email contacts McVey allegedly had with Illinois, but instead merely states that "Garfinkel and McVey, through

counsel, reached out . . . by email and telephone." (Pl.'s Resp. ¶ 14.) Centurion also groups together Garfinkel and McVey and does not distinguish any communications that either individual specifically had with Centurion's personnel or counsel in Illinois. Notably, Centurion did not make any specific allegations in its Amended Complaint, did not offer any specificity when it responded to Defendants' motion, and did not submit any affidavits to support its position, even though Defendants submitted declarations with their motion. Centurion has, therefore, failed to provide the Court with any evidence indicating that McVey had anything more than a single call or email, via counsel, with Centurion's counsel or personnel in Illinois. This failure undermines Centurion's ability to meet its burden of establishing a *prima facie* case.

Additionally, Centurion only cites one case to support its position that the unspecified amount of email and telephonic communications sufficiently establishes minimum contacts with Illinois. (Pl.'s Resp. ¶ 13.) This citation to *Master Tech Prods., Inc. v. Smith*, 181 F. Supp.2d 910, 912 (N.D. Ill. 2002), is unavailing. In *Master Tech*, the court found that a telephone call allegedly in furtherance of a scheme to defraud was "a relevant contact" for personal jurisdiction purposes. *Master Tech*, 181 F. Supp. 2d at 912. The *Master Tech* court, however, did not base jurisdiction on this single phone call alone, but instead concluded that jurisdiction was proper based on the defendant's contacts with Illinois in their totality, including both his own and those attributed to him through his agents. *Id*. at 913. Furthermore, the Seventh Circuit has acknowledged that letters, phone calls and emails do not *always* establish minimum contacts for due-process purposes. *Id*. at 679; *see also Triad* , 2008 WL 4104357 at *4 ("Isolated telephone calls and emails by themselves may not be sufficient to provide a basis for asserting personal jurisdiction.") (citing *Abbott Labs., Inc. v. Bio Valve Techs., Inc.*, 543 F.S upp.2d 913, 921 (N.D.

Ill. 2008)). Indeed, this is not a case like *Felland* where the plaintiff alleged that the defendant made multiple phone calls and sent almost two dozen emails to the plaintiff's home in Wisconsin. *Id*. Here, these calls and emails are of an unspecified number and are the only contacts possibly supporting jurisdiction.

Furthermore, the fact that the alleged telephonic or email communication occurred between counsel and Centurion, rather than between Defendants and Centurion directly, undermines the likelihood that Defendants foresaw being hauled into an Illinois court based on some unspecified number of telephone calls and emails made regarding an Agreement and Guarantee executed *in Texas*, regarding assets *in Texas*. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S .Ct. 559, 567, 62 L. Ed.2d 490 (1980) ("the foreseeability that is critical to the due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."). Indeed, Centurion states that McVey reached out "through counsel," indicating that it was not McVey himself who even reached into Illinois via the unspecified number of phone calls and emails. (Pl.'s Resp. ¶ 14.) Centurion also does not explain whose counsel McVey allegedly reached out through – whether it was his own counsel, SBMC's counsel, or McVey LLC's counsel. The facts before the Court, however, indicate that counsel would have been representing SBMC, of which McVey is a member, rather than McVey as an individual, or McVey LLC as a corporate entity. Centurion's Amended Complaint states that "*SBMC* sought to renegotiate the term" of the Agreement, including a waiver of the Guarantee. (Amend. Compl. ¶ 30 (emphasis added).) In another part of the Amended Complaint, Centurion specifically alleges that McVey acted through *SBMC's* counsel, Millard Johnson, to allegedly

11

make the misrepresentations to Centurion. (Amend. Compl. ¶ 60 (emphasis added).) Centurion cannot simply remove the corporate formalities that exist and treat McVey, McVey LLC, and SBMC as the same entity when they are legally three distinct entities, even if certain actions by one entity could, in certain instances, be imputed to another. Centurion offers no explanation or justification for treating the actions taken by one of these entities, or by counsel for one of these entities, as actions by all.

Defendants also may not have foreseen being hauled into a court in Illinois because they were not parties to any agreement executed in Illinois or subject to Illinois law. Indeed, although the Agreement did contain a forum selection clause designating Cook County, Illinois as the appropriate forum for disputes under the Agreement between Centurion and SBMC, neither McVey nor McVey LLC were parties to the Agreement. (McVey Decl. ¶ 6.) Furthermore, the Guarantee which McVey signed in connection with the execution of the Agreement, and which Centurion has since waived, did not contain a forum selection clause. (*Id*. ¶ 7.) The Guarantee was also "entirely performable in Houston, Texas." (*Id*. ¶ 15.)

A sister court in this district recently found that such facts cut against a finding of personal jurisdiction in *Simmons First Nat. Bank v. O'Kieffe,* No. 11 C 729, 2012 WL 2994076, at *5 (N.D. Ill. July 20, 2012). Specifically, that court stated that the defendants, who were original guarantors on a loan which the plaintiff subsequently guaranteed, had relatively "slight" contact with Illinois. *Id*. at *6. When analyzing jurisdiction, that court found it significant that "no part of the negotiations for the underlying loans was conducted in Illinois;" "the guaranties [plaintiff] signed state they were to be governed by the law of the state in which they were executed," namely Missouri; the "guaranties make no reference to Illinois at all;" and "are not

12

governed by [Illinois law]." *Id*. Each of these same factors cut against jurisdiction here.

Furthermore, the fact that Plaintiff is an Illinois company is not, on its own, enough to establish jurisdiction, particularly because Centurion has offered no specific evidence or any affidavits establishing that the release of the Guarantee occurred during the phone call or calls between counsel and Centurion personnel in Illinois. Indeed, even in cases where the parties have a contractual relationship, the "existence of a contract between an out-of-state defendant and an Illinois plaintiff is insufficient, by itself, to justify personal jurisdiction." *Corus Am., Inc. v. Int'l Safety Access Corp.*, No. 09 C 1422, 2009 WL 5183834, at *2-3 (N.D. Ill. Dec. 22, 2009) (citing *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997); *Burger King*, 471 U.S. at 478)); *see also Simmons,* 2012 WL 2994076 at *5 (finding that even if the defendants had been direct parties to a guarantee agreement with plaintiff "that alone would not be sufficient to establish an Illinois court's jurisdiction over them.") When parties have a contract, a court "consider[s] the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing in determining whether there were sufficient minimum contacts." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). At most, Plaintiffs here have alleged that Defendants, through counsel, negotiated the release of the Guarantee – which was negotiated, executed and performable in Texas and was part of a contract to which Defendants were not parties – at least in part via a phone call or calls and email with Centurion's counsel located in Illinois. Indeed, it is possible, even viewing all factual disputes in favor of Centurion, that Defendants only indirectly interacted with Illinois on one or two occasions, via a phone call or email *through counsel*, regarding a guarantee unrelated to any contract or business transaction in

Illinois. Centurion, therefore, has failed to demonstrate that McVey purposefully availed himself of the privilege of conducting activities in Illinois, thus invoking the benefits and protection of its laws, to foresee litigation here. *Burger King,* 471 U.S. at 474–75. McVey's unspecified number of calls and emails, via counsel, do not "demonstrate a real relationship with the state with respect to the transaction at issue, and not merely be based on fortuitous or attenuated contacts with the forum state" to warrant jurisdiction. *Triad Capital Mmgt., LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357, at *5 (N.D. Ill. Aug. 25, 2008) (citing Burger King, 471 U.S. at 475). Even viewing the undisputed facts in Centurion's favor, therefore, it has not sufficiently made a *prima facie* case for the Court's jurisdiction over McVey.[3]

Additionally, Centurion argues that the Court may exercise jurisdiction over McVey LLC by imputing the contacts McVey, its sole member and manager, to the company. (Pl.'s Resp. ¶¶ 21-24.) Because the Court lacks personal jurisdiction over McVey, Centurion has failed to establish jurisdiction over McVey LLC.

**II.     Venue or Transfer**

Because the Court finds that Plaintiff has not established the Court's jurisdiction over Defendants, the Court need not address Defendants' venue argument or alternative transfer argument.

---

[3] Notably, a number of Centurion's arguments regarding this propriety of this forum relate to the fact that SBMC faced a breach of contract claim based on the Agreement with a forum selection clause designating this jurisdiction as the proper forum. This breach of contract claim against SMBC would require McVey and McVey LLC, as the sole members of SBMC, to litigate in this jurisdiction. Centurion and SBMC, however, have agreed to a settlement. (R. 69.) These arguments are, therefore, moot.

## CONCLUSION

The Court grants Defendants' motion to dismiss for lack of personal jurisdiction without prejudice.

**DATED: May 7, 2013**

                                              **ENTERED**

                                              _____
                                              **AMY J. ST. EVE**
                                              **United States District Court Judge**